UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
KEVIN JOHN SOLLITT                              :
                                                :    CASE NO. 1:09-CV-43
         Plaintiff,                             :
                                                :
vs.                                             :
                                                :    OPINION & ORDER
                                                :    [Resolving Doc. Nos. 5, 8 & 10.]
KEYCORP, et al.                                 :
                                                :
         Defendants.                            :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this opinion and order, the Court decides whether this action should be remanded to state court upon Plaintiff Kevin John Sollitt's argument that this case presents no federal question sufficient to support jurisdiction. [Doc. 5.]

On December 3, 2008, Plaintiff Sollitt filed his Complaint in the Cuyahoga County Court of Common Pleas. [Doc. 1-A.] In that case, Plaintiff Sollitt alleged that he was wrongfully discharged in violation of the public policy of the State of Ohio. [*Id.*] On January 8, 2009, Defendant KeyCorp removed the case to this Court on the basis of federal question jurisdiction. [Doc. 1.] As discussed below, the Court finds that has federal question jurisdiction over this case pursuant to the Edge Act of 1913, 12 U.S.C. § 632. The Court therefore **DENIES** Plaintiff Sollitt's motion and declines to remand this case to state court.

**I. Background**

Plaintiff Sollitt's Complaint set forth a single cause of action: wrongful discharge in violation of the public policy of the State of Ohio. [Doc. 1-A.] Defendant KeyCorp removed Sollitt's lawsuit

-1-

Case No. 1:09-CV-43
Gwin, J.

to this Court on the basis of federal question jurisdiction. [Doc. 1.] With its petition for removal, the Defendant argued that this Court has federal question based on 28 U.S.C. § 1441(b) and the Edge Act of 1913, 12 U.S.C. § 632. The Edge Act states, in pertinent part, that

> all suits of a civil nature . . . to which any corporation organized under the laws of the United States shall be a party[] *arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . .* shall be deemed to arise under the laws of the United States and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632 (emphasis added).

Plaintiff Sollitt responds to Defendant Key Corp's removal action with the instant motion to remand. [Doc. 5.] In support of his motion to remand, Sollitt argues that his Complaint is entirely premised on Ohio law. According to Sollitt, "it is not Key[Corp's] foreign exchange business practices that are at issue[] in this case, but [KeyCorp's] motivations in terminating [Sollitt's] employment. The propriety of [KeyCorp's] foreign exchange business dealings are, at best, a peripheral matter." [*Id.* at 10.]

In response, Defendant KeyCorp contends that Plaintiff Sollitt's "lawsuit involves traditional banking functions [in that it is] . . . . based on alleged misrepresentations made by various Key[Corp] sales employees in the foreign currency exchange department regarding the best price that could be offered on foreign currency transactions." [Doc. 8 at 7.]

## II. Legal Standard

A defendant may remove any civil action brought in state court "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal question jurisdiction

Case No. 1:09-CV-43
Gwin, J.

exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The party seeking removal bears the burden of establishing federal question jurisdiction. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453-54 (6th Cir. 1996).

A case "arises under" federal law:

> only when the plaintiff's statement of his own cause of action shows that it is based upon [federal] laws or the Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States.

*Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). This requirement is known as the "well-pleaded complaint rule." *See, e.g.*, *Kerr-McGee Chem. Corp. v. Ill.*, 459 U.S. 1049 (1982) (citations omitted).

Under the well-pleaded complaint rule, the plaintiff is master of his complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The Supreme Court does not allow a defendant to foist federal jurisdiction onto a plaintiff's complaint: "the question whether a party claims a right under the constitution or laws of the United States is to be ascertained by the legal construction of its own allegation, and not by the effect attributed to those allegations by the adverse party." *Tenn. v. Union & Planters' Bank*, 152 U.S. 454, 460 (1894) (citation omitted). A defendant cannot "create removal jurisdiction merely by raising a federal question as a defense." *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 344 (6th Cir. 1989) (citation omitted).

Moreover, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Instead, the cause of action must contain a "substantial" federal issue. *Id.* at 813-14. If a federal court determines that a case does not raise a substantial federal question, it must

Case No. 1:09-CV-43
Gwin, J.

remand the case. 28 U.S.C. § 1447(c). Likewise, if a party improperly removes a case to federal court, the court must remand the case back to the appropriate state court. 28 U.S.C. § 1447(d). If a federal court is in doubt of its jurisdiction, it must resolve such doubt in favor of state court jurisdiction. *See Brierly v. Alusuisse Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). Because the removal statutes implicate federalism concerns, a court must narrowly construe the statutes against removal. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

### III. Analysis

This case raises a substantial federal question that confers jurisdiction upon the Court. As a result, the Court declines to remand this case to state court.

Plaintiff Sollitt argues that he does not assert any federal causes of action in his Complaint. He posits that Ohio law, specifically the Ohio common law tort of wrongful discharge in violation of the state's public policy, forms the basis of his single claim against Defendant KeyCorp. In contrast, Defendant KeyCorp argues that the Edge Act of 1913, 12 U.S.C. § 632, confers jurisdiction on the Court with respect to Sollitt's claim because this claim involves international banking transactions. *See Bucheit Int'l, Inc. v. Ameritrust Co. Nat'l Ass'n*, No. 95-4267, 1997 WL 21196, at *1 (6th Cir. Jan 17, 1997).

To establish jurisdiction under the Edge Act, (1) the suit must be civil in nature; (2) one of the parties in interest must be a corporation organized under the laws of the United States; and (3) the suit must arise out of a transaction involving international or foreign banking. *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 21-95, 2003 WL 22097502, at * 2 (S.D.N.Y. Sept. 10, 2003).

"The mere fact that a bank is party to an action does not trigger section 632 jurisdiction,"

-4-

Case No. 1:09-CV-43
Gwin, J.

however. *Burgos v. Citibank, N.A.*, 432 F.3d 46, 48 (1st Cir. 2005). Indeed, "[s]ection 632 reaches only traditional banking activities . . . ." *Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*, 690 F.2d 1, 4 (1st Cir. 1982) (citations omitted); *see also Telecredit Serv. Ctr. v. First Nat'l Bank of the Fla. Keys*, 679 F. Supp. 1101, 1003 (S.D. Fla. 1988) ("The focus of the court's inquiry must be whether 'the transaction in question be one 'arising out of . . . international or foreign banking.'") (citations omitted). Traditional banking activities "include, *inter alia*, mortgage loan agreements, foreclosures on such mortgages, loan guarantor agreements, subordination agreements, and suits to recover on defaulted loans," *Burgos*, 432 F.3d at 49, though these activities must contain some foreign aspect to qualify for Edge Act jurisdiction. Further, courts have also deemed currency conversion and the imposition of foreign currency conversion fees to be traditional banking functions. *See Clarken v. Citicorp Diners Club, Inc.*, No. 01-C-5123, 2001 WL 1263366, at *1 (N.D. Ill. Oct. 22, 2001).

Courts have adopted a relatively narrow interpretation of the Edge Act, ordering a remand if claims in particular cases were not "integrally tied to banking activity, such that the courts were required to consider and apply principles of banking law to resolve them," *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232-233 (S.D.N.Y. 1994), and if "the banking aspect of the jurisdictional transaction[s] [were not] legally significant in the case[s]," *id.* at 233.

Defendant Key Corp indisputably meets the first two requirements of Edge Act jurisdiction: Plaintiff Sollitt makes a civil claim and Defendant KeyCorp is an Ohio corporation. While acknowledging this fact, Plaintiff Sollitt disputes whether this case implicates traditional banking activities.

Plaintiff Sollitt's Complaint, however, centers on his claim that Defendant KeyCorp

Case No. 1:09-CV-43
Gwin, J.

fraudulently induced its customer, Parker Hannifin, to pay an improper exchange rate on a March 2008 transactions, netting KeyCorp "hundreds of thousands of dollars in additional profit on this single transaction." [Doc. 1-A at 7.] In his Complaint, Sollitt alleges:

> 31.    . . . In this case Mr. Sollitt provided the market-rate on the Parker Hannifin trade, absorbing the risk generated in a volatile market and providing to Mr[.] Giust [the head or sector manager of the institutional bank side of KeyCorp's foreign exchange sales group] competitive rate. Mr. Sollitt later learned that Mr. Giust took not only a normal spread on this trade but that after some time had passed from the original transaction, Mr. Giust called Parker Hannifin back and changed the rate to disadvantage the client, thereby reaping extra profit for KeyCorp and for himself. Mr. Giust told Parker Hannifin that the new late was necessitated by an error on the part of the trading desk. In reality, however, the price provided by the Mr[.] Sollitt and the trading desk never changed. Mr. Giust's actions netted KeyCorp hundreds of thousands of dollars in additional profit on this single transaction.
>
> 32.    Following the trade, Mr. Sollitt raised objections to Mr. Giust's actions in belatedly extracting hundreds of thousands of dollars from a client under false pretenses Indeed, Mr. Sollitt complained to Mr. Giust directly that the exorbitant profit extracted from Parker Hannifin represented the value of several manufacturing jobs.

[*Id.*] Regarding other clients, Sollitt says he complained concerning "the practices of Mr. Giust, including his practice of misrepresenting to clients the best possible price that KeyCorp could obtain on a given transaction." [*Id.*] Sollitt then alleges that KeyCorp fired him in retaliation "after he voiced objections to KeyCorp's business practices . . . ."[*Id.* at 10.]

Thus, contrary to Plaintiff Sollitt's argument in support of remand, this case centers on KeyCorp's foreign exchange banking practices and transactions. Sollitt argues that these practices and transactions were unlawful or otherwise improper while contending that his own actions were lawful and proper. [Doc. 5 at 6-7.]

Further, Plaintiff Sollitt's state law claim of wrongful discharge in violation of the state's public policy is "integrally tied to banking activity, such that the [Court is] required to consider and

Case No. 1:09-CV-43
Gwin, J.

apply principles of banking law to resolve [it]." *Bank of N.Y.*, 861 F. Supp. at 232-233. Under Ohio law, Sollitt would need to demonstrate that (1) clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer lacked overriding legitimate business justification for the dismissal. *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-530 (Ohio 2002). This test requires the Court to delve deeply into the policies and practices of Defendant KeyCorp with respect to its foreign exchange banking transactions and operations.

Thus, "the banking aspect of the jurisdictional transaction [is] legally significant in [this] case," *Bank of N.Y.*, 861 F. Supp. at 233, and the Court therefore has federal question jurisdiction over this case pursuant to the Edge Act of 1913, 12 U.S.C. § 632.

### IV. Conclusion

For the above noted reasons, the Court finds that it has federal question jurisdiction over this case. As a result, the Court **DENIES** Plaintiff Sollitt's motion and declines to remand this case to state court

IT IS SO ORDERED.

Dated: February 11, 2009                    *s/        James S. Gwin*
                                                                                  JAMES S. GWIN
                                                                                 UNITED STATES DISTRICT JUDGE