UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
KEVIN JOHN SOLLITT                              :
:           CASE NO. 1:09-CV-43
            Plaintiff,                          :
:
vs.                                             :           OPINION & ORDER
:           [Resolving Doc. Nos. 13, 14 & 19.]
KEYCORP, *et al.*                               :
:
            Defendants.                         :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is a motion for a protective order filed by Defendant KeyCorp. [Doc. 13, 19.] Plaintiff Kevin John Sollitt opposes the Defendant's motion for a protective order. [Doc. 14.] For the reasons stated below, the Court **DENIES** the Defendant's motion.

### I. Background

The current lawsuit arises out of Plaintiff Sollitt's contention that Defendant KeyCorp wrongfully discharged him in violation of the public policy of the State of Ohio. As part of his claim, Sollitt argues that his termination for improper computer usage was pretextual and that he was actually fired because he objected to certain transactions and practices of KeyCorp's foreign exchange sales department.

Defendant KeyCorp now moves the Court for a protective order, stating that it desires to "protect the confidentiality of certain information sought during discovery in this case consisting of: (1) sensitive commercial information relating to Key's clients who are not parties to this litigation; (2) Key's sensitive commercial information which is not publicly available and will damage Key's

Case No. 1:09-CV-43
Gwin, J.

competitive position in the foreign exchange transaction business if published; and (3) the personnel records of current and former employees of Key who are not parties to this litigation . . . ." [Doc. 13 at 1.] Plaintiff Sollitt opposes the motion for a protective order, arguing that KeyCorp has not established the need for confidentiality and has not overcome "the presumption in favor of public access to judicial records" by demonstrating that disclosure of the information requested in the discovery process would result in improper competitive or financial harm to KeyCorp. [Doc. 14 at 4.]

## II. Legal Standard & Analysis

The Federal Rules of Civil Procedure vest a trial court with the authority to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." upon a showing of good cause. FED. R. CIV. P. 26©. A trial court can, in its sound discretion, grant a motion for a protective order. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

In deciding whether to grant a protective order, a district court must balance the parties' competing interests and compare the hardships of granting or denying the request. *York v. Am. Med. Sys., Inc.*, No. 97-4306, 1998 WL 863790, at *4 (6th Cir. Nov. 23, 1998). The movant bears the burden of demonstrating that the balancing of hardships weighs in his favor. *Nix v. Sword*, 11 Fed. Appx 498, 500 (6th Cir. 2001).

When deciding whether to grant a protective order, a district court must also remain aware that its discretion to issue protective orders is "limited by the careful dictates of [Federal Rule of Civil Procedure] 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Procter & Gamble*, 78 F.3d at 227 (citing *Brown & Williamson Tobacco*

-2-

Case No. 1:09-CV-43
Gwin, J.

*Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983)). Unwarranted secrecy of court documents precludes the public's right to act as an important check on the judicial system's integrity. *Brown & Williamson.* 710 F.2d at 1179. For this reason, a presumption in favor of public access to judicial records exists. *See, e.g. In re Perrigo Co.*, 128 F.3d 430, 447 (6th Cir. 1997).

Even if the parties agree to the terms of a protective order, the district court should not permit them "to adjudicate their own case based upon their own self-interest. This is a violation not only of Rule 26© but of the principles so painstakingly discussed in *Brown & Williamson*." *Procter & Gamble*, 78 F.3d at 227. The district court "cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public. It certainly should not turn this function over to the parties . . . ." *Id.*; *see also Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993).

To prevail on a request to seal information in a court's records, the movant must therefore make a specific showing that disclosure of the information would result in serious competitive or financial harm. *Tinman v. Blue Cross & Blue Shield of Mich.*, 176 F. Supp. 2d 743, 745 (E.D. Mich. 2001).; *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991); *Fed. Trade Comm'n v. Standard Mgt. Corp.*, 830 F.2d 404, 412(1st Cir. 1987); *Brown & Williamson*, 710 F.2d at 1180. The Court has adopted this requirement and therefore demands that the movant for a protective order show substantial personal or financial harm before the Court will seal any documents.

This Court operates as a public forum, not as a private dispute resolution service, *United States v. Ford*, 830 F.2d 596, 599 (6th Cir. 1987), that, in deciding whether to allow civil litigants

-3-

Case No. 1:09-CV-43
Gwin, J.

to file records under seal, must consider "the rights of the public, an absent third party" to which the Court ultimately is accountable, *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985).

The proposed protective order submitted by Defendant KeyCorp in this case is entirely overbroad and unspecific, stating that "[a]ll documents produced in the course of discovery, including initial disclosures, all responses to discovery requests, all deposition testimony and exhibits, [and] other materials which may be subject to restrictions on disclosure for good cause and information derived directly therefrom . . . shall be subject to this Order concerning Confidential Information as set forth below." [Doc. 13, Ex. A at 1.] Further, KeyCorp does not demonstrate to the Court's satisfaction, either in the protective order or in the memorandum in support, how the public dissemination of the allegedly confidential information would cause KeyCorp (or other entities or persons) substantial and improper personal or financial harm.

In this case, Plaintiff Sollitt generally claims that Defendant KeyCorp fired him in violation of the public policy of the State of Ohio after he complained about a March 2008 foreign currency exchange transaction involving Parker Hannifin. In that transaction, Plaintiff Sollitt says that KeyCorp employee Flavio Giust misrepresented to Parker Hannifin the best available market-rate:

> 31. . . . Mr. Sollitt provided the market-rate on the Parker Hannifin trade, absorbing the risk generated in a volatile market and providing to Mr Giust a competitive rate. Mr. Sollitt later learned that Mr. Giust took not only a normal spread on this trade but that after some time had passed from the original transaction, Mr. Giust called Parker Hannifin back and changed the rate to disadvantage the client, thereby reaping extra profit for KeyCorp and for himself. Mr. Giust told Parker Hannifin that the new late was necessitated by an error on the part of the trading desk. In reality, however, the price provided by Mr. Sollitt and the trading desk never changed. Mr. Giust's actions netted KeyCorp hundreds of thousands of dollars in additional profit on this single transaction.

[Doc. 1, Ex. A, ¶ 31.] Plaintiff Sollitt alleges that he complained about this transaction to his, and

Case No. 1:09-CV-43
Gwin, J.

Giust's, supervisor, Denise Shade. [*Id.* ¶ 32.] Sollitt also states that after the transaction was completed, he traveled to New York with Shade for a meeting with KeyCorp's main liquidity providers "to provide explanations and address questions regarding the manner in which the Parker Hannifin deal was executed." [*Id.* ¶ 30.]

On or about August 20, 2008, KeyCorp fired Plaintiff Sollitt, informing him that he was being terminated for violating KeyCorp's Electronic Communications Use Standard Policy. KeyCorp says that it fired Sollitt "for receiving emails of an inappropriate nature between May 6, 2008 and July 14, 2008 and forwarding some of those inappropriate emails to his personal email account." [Doc. 3, ¶ 40.] These materials apparently involved obscene content. In response, Plaintiff Sollitt says that the reason proffered by KeyCorp for his termination is pretextual and that he was actually fired because he complained about misrepresentations made by KeyCorp employees to KeyCorp customers concerning foreign currency exchange market-rates with the goal of securing higher profits. KeyCorp denies that it misrepresented its costs to its customers to secure higher profits.

With regard to the request for a protective order, the Court finds little support for the Defendant's argument that the general presumption in favor of public disclosure and open proceedings has been overcome. At conference, Defense Counsel represented that foreign currency exchange pricing changes minute-by-minute. Given the fluctuations that have befallen our financial systems, the Defendant makes no showing that the disclosure of its currency exchange pricing from the March 2008 - August 2008 period would improperly disadvantage KeyCorp going forward. Stated otherwise, if pricing is constantly changing, historical pricing trends provide little if any detriment to KeyCorp's ability to price transactions going forward.

Regarding past foreign currency exchange pricing, the Court understands Defendant KeyCorp

Case No. 1:09-CV-43
Gwin, J.

to express concern that disclosure of its pricing practices and profits might impact its relationship with its own customers. This concern is overstated, however. At conference, KeyCorp represented that it priced foreign exchange transactions in a highly competitive market and suggested that its transactions with Parker Hannifin and other customers were conducted at arms-length, with no customer relying upon KeyCorp's representations regarding pricing. Presuming this to be true, the Court is at a loss to see how public access to such information would disadvantage the Defendant.

KeyCorp separately seeks to avoid disclosure of personal information of its employees who were subjected to KeyCorp's internet and electronic communications usage review. At conference, Defendant KeyCorp represented that its review of its employees' internet and electronic communications usage revealed a relatively large number of employees, including employees at Sollitt's level and above, who had inappropriate materials on their computers or email programs. Some of these employees were apparently fired, though most were not. Given KeyCorp's position that it terminated Sollitt for inappropriate internet use, KeyCorp's treatment of other employees with similar issues seems obviously relevant.

With respect to whether information concerning KeyCorp's current and former employees whose internet and computer usage was reviewed should be kept confidential, the Court finds inconsistent KeyCorp's position that such information should be kept confidential. Presumptively, KeyCorp advised its employees that their internet and computer use could be monitored and would not be considered personally confidential. KeyCorp itself monitored and viewed its employees' internet and computer use. And KeyCorp has not pointed to any federal or state law making such internet and computer usage records confidential. Against this backdrop, the Court will not give a blanket protective order regarding the internet and computer usage or files of KeyCorp's current or

Case No. 1:09-CV-43
Gwin, J.

former employees.

Therefore, KeyCorp has failed to carry its burden in the instant motion. *See* [Tinman, 176 F. Supp. 2d at 745.](#) The Court does acknowledge that the dissemination of social security numbers would cause substantial personal harm to current and former KeyCorp employees and it thus requires Plaintiff Sollitt to redact or to otherwise treat as confidential any social security numbers that he gleans from the personnel records or other documents produced in this case.

### III. Conclusion

For the abovementioned reasons, the Court **DENIES** the Defendant's motion for a protective order.

IT IS SO ORDERED.

Dated: February 26, 2009                    s/    *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE