UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                        :
KEVIN JOHN SOLLITT,                     :
                                        :
                    Plaintiff,          :           CASE NO. 1:09-CV-43
                                        :
                                        :
        v.                              :           OPINION & ORDER
                                        :           [Resolving Doc. Nos. 100, 101 & 102.]
KEYCORP, et al.,                        :
                                        :
                    Defendants.         :
                                        :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        After this Court granted summary judgment to Defendants KeyCorp and KeyBank, N.A. in

this employment discrimination action, Plaintiff Kevin John Sollitt appealed to the Sixth Circuit.

[Doc. 90 (notice of appeal); Doc. 88 (summary judgment opinion and order); Doc. 89 (judgment).]

Since filing his appeal, Sollitt claims to have discovered evidence that one of Key's employees lied

in his deposition in this case.  [Doc. 100.]  Consequently, Sollitt asks this Court to indicate whether

it would entertain a Rule 60(b)(3) motion to vacate its summary judgment order, thus permitting the

Sixth Circuit to remand the case for further proceedings here.  [Doc. 100.]

        A brief summary of this case is necessary to understand Sollitt's present motion:  Sollitt, a

former Key employee, brought this action for wrongful discharge in violation of public policy.  [Doc.

1-1.]  Key claims it fired Sollitt because he used his work computer to access pornographic images;

Sollitt contends that that reason is pretextual and that he really lost his job because he complained

about Key's foreign exchange ("FX") sales department transaction markup practices.  [Doc. 1-1.]

Case No. 1:09-CV-43
Gwin, J.

After preliminary discovery, the Court granted Key's summary judgment motion for three

independent reasons.  [Doc. 88.]

*First*, Sollitt could not establish the "clarity" element of his wrongful discharge claim as a

matter of law.  [Doc. 88 at 8-10.]  Because the FX market is generally competitive and transparent

and features sophisticated purchasers, market forces can be expected to adequately deter excessive

markups.  As a result, Key's markup practices could not have violated any clear public policy against

fraud.

*Second*, Sollitt could not, as a matter of law, establish the "jeopardy" element of his wrongful

discharge claim for two reasons.  [Doc. 88 at 10-11.]  As a preliminary matter, Sollitt failed to

invoke any public policy against fraud as the basis for his complaints to Key.  *See Jermer v. Siemens*

*Energy & Automation, Inc.*, 395 F.3d 655, 659 (6th Cir. 2005) (To satisfy the jeopardy element, "the

employee must at least have made clear to his employer that he is invoking a governmental policy

as the basis for his complaint, not just his own self-interest.  Otherwise, the employer is not

effectively put on notice that the employee is acting not only for himself, but also for the public at

large. . . .  [The employee's complaint] must do more than merely indicate a preference or make a

vague statement.  It must at least connect the employer's conduct in some way to government policy

. . . .").  Moreover, permitting FX facilitators to fire employees—like Sollitt—who complain about

fraudulent markups would hardly jeopardize a public policy against fraud because market forces

already encourage FX purchasers to vigilantly police fraudulent markups.

*Third*, Sollitt could not establish the "causation" element of his wrongful discharge claim for

two reasons.  The five-month lapse between Sollitt's complaints and his termination defeated any

inference that his complaints were the cause of his termination.  [Doc. 88 at 12-13 (citing *Moon v.*

Case No. 1:09-CV-43
Gwin, J.

*Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir. 1987)).]  Further, Sollitt failed to adduce any evidence that Richard Owens, the Key employee who fired Sollitt, knew about Sollitt's complaints when he terminated Sollitt.  [Doc. 88 at 11-13.]  Indeed, in his deposition, Owens unequivocally denied knowing about any complaints of fraud in Key's FX department.[1/]  [Doc. 88 at 12.]

Accordingly, because Sollitt could not establish three of the four requisite elements of his wrongful discharge claim, this Court granted Key's summary judgment motion.  [Doc. 88.]

Now, Sollitt contends that Key obtained that judgment by fraud or misrepresentation.  [Doc. 100.]  In particular, Sollitt claims that Owens's denial that he knew about complaints of fraud in Key's FX department was false.  [Doc. 100.]  Sollitt points to a deposition in a later unrelated case in which a former Key employee testified that in late 2006 (*i.e.*, before Sollitt was fired) she informed Owens about an internal Key investigation of fraudulent activity by an employee in the FX department.[2/]  [Doc. 100.]  Thus, Sollitt urges, because Owens misrepresented his knowledge of

---

[1/]Owens's deposition testimony was:

Q.  Are you aware of any occasion where an employee of the FX department actually lied to a customer?

A.  Not that I'm aware of.  Not that it was brought to my attention.

* * * * *

Q.  Are you aware of any occasion where there was any complaint that an employee at KeyBank in the FX department had deceived a customer?

A.  I've never heard of anyone having that accusation leveled against them.

[Doc. 100-1 (Deposition of Richard Owens) at 174-75.]

[2/]The deposition testimony of the former Key human resources employee, Marie Carney, was:

Q.  Sometime late 2006?

A.  Yes.

(continued...)

Case No. 1:09-CV-43
Gwin, J.

complaints about fraud in Key's FX department, Sollitt is entitled to relief from the Court's summary

judgment order under Federal Rule of Civil Procedure 60(b)(3).  [Doc. 100.]

   This apparent inconsistency in Owens's testimony, while troubling, is insufficient for Rule

60(b)(3) relief here.  First, as explained above, the Court granted Key's summary judgment motion

on three independent grounds: the clarity element, the jeopardy element, and the causation element.

---

[2]/(...continued)

Q.  An employee comes to you and raises a concern about [a former FX manager's] practices in derivatives trading, specifically that [the former FX manager] would get a price from an employee for a transaction with a client than then take the price from the employee and raise the price essentially to the benefit of KeyBank in communicating with the client, and that would ultimately result in a benefit to KeyBank?

A.  That was my understanding, yes.

* * * * *

Q.  And you then involved Richard Owens to determine whether or not that would constitute fraud?

A.  To understand the business practices, yes.

Q.  And after discussing those issues with Richard Owens, you determined that it was not typical business and that it was a concern related to fraud?

A.  Correct.  We determined that a full investigation was warranted.

* * * * *

Q.  Based upon what Richard [Owens] told you relative to this concern, Richard had concluded that if a manager of derivatives trading was getting a price from one of his employees, and then giving a client a higher price that that would be fraud?

A.  That it wasn't typical business practice.  I don't think at that point that we were conclusive that it was fraud, but we knew it was not typical business practice.

Q.  And it raised concerns about fraud?

A.  Yes.

Q.  And that was Richard [Owens's] belief as well?

A.  Yes.

[Doc. 100-2 (Deposition of Marie Carney in *Houser v. KeyBank, N.A.*, No. CV-09-701181 (Cuyahoga County Court of Common Pleas)) at 45-49.]

Case No. 1:09-CV-43
Gwin, J.

[Doc. 88.]  The inconsistency in Owens's testimony affects at most the causation element; the defects in the clarity element and the jeopardy element—which did not depend on Owen's testimony—were sufficient, by themselves, to entitle Key to summary judgment.

Second, the Court's conclusion that Sollitt failed, as a matter of law, to establish the causation element would stand without Owens's testimony.  As explained above, the Court found causation lacking as a matter of law for two reasons: (1) Owens's lack of knowledge of Sollitt's complaints, and (2) the long time lapse between Sollitt's complaints and his termination.  [Doc. 88.] The newly discovered inconsistency in Owen's testimony does not affect the second reason; regardless of what Owens knew, Sollitt was not fired until five months after he complained.  That lapse was enough to defeat, as a matter of law, any inference of causation.  *See Moon*, 836 F.2d at 229.

Third, it is not even clear that the apparent inconsistency affects the first reason that Sollitt failed to establish causation.  The Court's summary judgment opinion explained that Owens claimed to know nothing about *Sollitt's* complaints about fraud in Key's FX department.  [Doc. 88 at 12 ("Sollitt cannot establish that [Owens] knew about Sollitt's complaints regarding the Parker transaction and other KeyCorp transactions.  Owens . . . states that he did not have any knowledge of Sollitt's complaints regarding Flavio Giust and the Parker transaction both before and after he discharged Sollitt.").]  Sollitt now contends that Owens misrepresented his knowledge about *another* complaint about fraud in Key's FX department.  *See* note 2, *supra*.  Regardless of what Owens knew about *other* complaints, if he did not know about *Sollitt's* complaints, then it was impossible for Owens to have fired Sollitt because of those complaints.

Thus, Owens's misrepresentation did not prejudice the outcome of Key's summary judgment

Case No. 1:09-CV-43
Gwin, J.

motion.  As a result, Rule 60(b)(3) relief is inappropriate here.

But if the Sixth Circuit were to affirm the grant of summary judgment to Key based solely on Owens's purported lack of knowledge of Sollitt's complaints, this Court would entertain Sollitt's Rule 60(b)(3) motion to probe the veracity of Owens's statement.

And regardless of how the Sixth Circuit resolves the appeal, once this Court regains jurisdiction over the case, it would be inclined to consider a motion for sanctions if Sollitt can show that Owens's statements were false.  As the Sixth Circuit has explained, "[o]ur system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428-29 (6th Cir. 1996).

IT IS SO ORDERED.


Dated: April 6, 2010                                   s/          *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE