NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0123n.06

Case Nos. 09-4143 & 10-3408

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 01, 2012
LEONARD GREEN, Clerk

| | |
|---|---|
| KEVIN JOHN SOLLITT, | ) |
| | ) |
| Plaintiff-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE NORTHERN |
| | ) DISTRICT OF OHIO |
| KEYCORP, *et al.*, | ) |
| | ) |
| Defendants-Appellees. | ) |
| | ) |

Before: BATCHELDER, Chief Circuit Judge; COLE and GIBBONS, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** John Sollitt sued his former employer, KeyCorp, in an Ohio court, claiming wrongful termination. KeyCorp removed the case to federal district court and Sollitt moved for remand, but the district court denied. KeyCorp moved for summary judgment on the merits, which the district court granted. On appeal, Sollitt contends, *inter alia*, that federal jurisdiction is lacking and the district court erred by refusing to remand. We agree.

I.

KeyCorp's Foreign Currency Exchange ("FX") Group is separated into two "sectors" or "desks": FX Sales and FX Trading. Basically, FX Sales sells foreign currencies to customers and FX Trading executes the trades necessary to satisfy the sales. Sollitt was the Sector Manager for FX Trading and Flavio Guist the Sector Manager for FX Sales. The two sectors worked closely together and both Sollitt and Guist reported to Denise Shade, the FX Group Manager. Shade reported to Richard Owens, the FX Department Head, who oversaw all of the Groups in the FX Department.

Nos. 09-4143/10-3408, *Sollitt v. KeyCorp., et al.*

In April 2008, Sollitt complained to Shade that he had caught Guist taking advantage of a customer, Parker Hannifin Corp. ("PHC"), on a sale of $250 million in Canadian dollars. According to Sollitt, Guist quoted PHC a price, PHC accepted, and then Guist raised the price, claiming (falsely) that there had been an error in the original quote. There had been no error, Sollitt claimed; Guist had lied to exact additional profit. PHC agreed to the higher price and Guist (KeyCorp) netted an additional several hundred thousand dollars. Shade did not respond to Sollitt's accusation because she did not recognize it as being serious. Sollitt complained to Shade again the next day and, in the weeks and months that followed, Sollitt repeatedly complained to Shade that Guist and the FX Sales personnel were committing fraud and misrepresentation to obtain higher prices and more profit. Sollitt himself never reported this to Owens, nor did Shade relay these complaints to Owens or anyone else.

In July 2008, KeyCorp used a new software to conduct a company-wide "sweep" of all of its employees' email, scanning for pornography, nudity, or otherwise offensive content. The scan of Sollitt's email account revealed that, between May 1 and July 14, 2008, Sollitt received over 80 emails containing nude images or other pornographic content (some extremely graphic) and had forwarded some of the emails to his personal account. A Senior Employee Relations Consultant from the corporate human resources department conducted an internal investigation, concluded that Sollitt had violated KeyCorp's Code of Ethics, and recommended to Owens that he fire Sollitt. The recommendation was based on several factors: the frequency, volume, and graphic content of the emails; that Sollitt forwarded some to his outside account; that Sollitt never attempted to stop the

sender from sending them; that Sollitt had a responsibility as a manager to serve as a role model; and that Sollitt did not appreciate the seriousness of the offense, stating that even though he knew he was receiving pornographic emails in violation of company policy he considered stopping these emails a "backseat priority." Owens fired Sollitt and also fired the only other employee in the FX Department who had been caught in the sweep. Overall, KeyCorp caught 90 employees in the sweep and fired 20 of them. Little explanation was offered as to why some were fired and others were not.

Sollitt sued in Ohio court, claiming "wrongful discharge in violation of public policy" — i.e., KeyCorp had actually fired him because he had complained about Guist's and the FX Sales desk's fraud and misrepresentation in the sale of foreign currency. KeyCorp removed the case to federal court citing the Edge Act of 1913, 12 U.S.C. § 632, a statute that provides for federal subject matter jurisdiction in certain types of civil cases involving United States corporations and international or foreign banking. Sollitt moved the district court to remand the case but the court declined. The court found that "this case centers on KeyCorp's foreign exchange banking practices and transactions" because "Sollitt argues that these practices and transactions were unlawful or otherwise improper[,] while contending that his own actions were lawful and proper."

## II.

The district court relied on the Edge Act as the source of federal subject matter jurisdiction and the basis for removal in this case. The Edge Act provides, in relevant part:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . or out of other international or foreign financial operations, . . . shall be deemed to arise under the

Nos. 09-4143/10-3408, *Sollitt v. KeyCorp., et al.*

>   laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632. KeyCorp asserted — and the district court agreed — that, as described in Sollitt's complaint, the claim arose out of transactions involving international or foreign banking, and the foreign currency transactions would be central to the disposition of the dispute.

Subject matter jurisdiction is always a threshold determination. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (there is no "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt"). We consider this challenge, concerning removal and federal subject matter jurisdiction, *de novo*, as a question of law. *Cf. Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011). Removal statutes are strictly construed with all doubts resolved against removal. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). And the removing party has the burden of proving federal jurisdiction. *See Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007).

The required elements of the Edge Act are clear from the statute and have been interpreted consistently by the relatively few courts to have considered and addressed jurisdiction under it:

>   To establish jurisdiction under the Edge Act: (1) the suit must be civil in nature; (2) one of the parties at interest [must be] a corporation organized under the laws of the United States; and (3) the suit [must] arise[] out of a transaction involving international or foreign banking.

*Retailers Nat. Bank v. Harding*, No. C 03-4190, 2006 WL 6181282 at *2 (N.D. Cal. June 30, 2006) (citing cases) (citations, quotation marks, and editorial marks omitted).

Nos. 09-4143/10-3408, *Sollitt v. KeyCorp., et al.*

The present case is plainly civil in nature and the defendant, KeyCorp, is a corporation organized under the laws of the United States. Moreover, allegations in this case involve foreign currency transactions, which are international or foreign banking activities. *See* 12 U.S.C. § 24(7). The question at issue is whether Sollitt's claim (for wrongful termination) actually arises out of the transaction or transactions involving international or foreign banking. We hold that it does not.

There are, to be sure, cases asserting that "a suit satisfies the jurisdictional requisites of Section 632 if *any part of it* arises out of transactions involving international or foreign banking." *Pinto v. Bank One Corp.*, No. 02 Civ. 8477, 2003 WL 21297300 at *3 (S.D.N.Y. June 4, 2003) (emphasis added; editorial marks omitted) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996)). We are reluctant to subscribe to such an inherently limitless view. Suppose, for example, that Sollitt had tripped and fallen over a stack of carelessly placed printouts of foreign-currency transactions. This meager association — ridiculous as it is — between the potential negligence claim and the foreign banking transaction that generated the printouts, would appear to suffice for Edge Act jurisdiction under so limitless a view. That cannot be correct.

Other courts have imposed specific limits, such as requiring that the claim "stem from the supposed foreign aspect of the transaction," *Telecredit Serv. Ctr. v. First Nat. Bank of the Fla. Keys*, 679 F. Supp. 1101, 1104 (S.D. Fla. 1988), or "that the banking aspect of the jurisdictional transaction must be legally significant in the case," *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 233 (S.D.N.Y. 1994). But theses cases are not without criticism. *See*, *e.g.*, *City of Stockton v. Bank of Am., N.A.*, No. C-08-4060, 2008 WL 4911183 at *4 (N.D. Cal. Nov. 13, 2008) (criticizing

Nos. 09-4143/10-3408, *Sollitt v. KeyCorp., et al.*

*Telecredit*); *In re Lloyd's*, 928 F. Supp. at 340 (noting that the "decision in *Bank of New York* is. . . inconsistent with the text of Section 632"); *but see Retailers Nat. Bank*, 2006 WL 6181282 at *3 ("The Court does not find any inconsistency between these [*Pinto* and *Telecredit*] cases.").

A recent case acknowledged these competing views and hinted at the difficulty that courts are having in either reconciling them or choosing between them:

> Federal courts are divided on whether 12 U.S.C. § 632 should be interpreted as providing a broad basis for federal jurisdiction or whether the statute should be read more narrowly. *See Bank of New York v. Bank of America*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) (noting that courts have generally interpreted 12 U.S.C. § 632 narrowly); *Bank of America Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005) (noting that courts have generally interpreted 12 U.S.C. § 632 broadly). The lack of [federal appellate] precedent relating to 12 U.S.C. § 632 and the absence of an authoritative explication in the legislative history of the statute's jurisdictional component further complicate this matter. *See A.I. Trade Finance, Inc. v. Petra Intern. Banking Corp.*, 62 F.3d 1454, (D.C. Cir. 1995) (noting that the legislative history of 12 U.S.C. § 632 is of little help in divining its purpose).

*New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. Civ-09-0178, 2009 WL 3672921 at *2 (D.N.M. Apr. 13, 2009). In the present appeal, each party backs a competing view (Sollitt for the narrow and KeyCorp for the broad) and argues capably for its selection.

But, having reviewed the relatively sparse case law, we find the present situation most closely analogous to *Diaz v. Pan American Federal Savings and Loan Association*, 635 F.2d 30 (1st Cir. 1980), a case in which the First Circuit held that a malicious-prosecution claim did not fall within the Edge Act. *See also Burgos v. Citibank, N.A.*, 432 F.3d 46, 49 (1st Cir. 2005) (distinguishing two claims, breach of contract and malicious prosecution, and finding Edge Act jurisdiction for the breach of contract while declining to consider the malicious prosecution).

6

Nos. 09-4143/10-3408, *Sollitt v. KeyCorp., et al.*

In *Diaz*, 432 F.3d at 31, the plaintiff bounced a couple of checks and Pan American Bank pressed criminal charges. Diaz sued in federal court, claiming malicious prosecution. *Id*. The district court rejected Diaz's Edge Act argument — i.e., that his was a civil case, against a U.S. bank, arising out of a banking transaction in Puerto Rico[1] — and dismissed for lack of jurisdiction. *Id*. The First Circuit agreed and affirmed the dismissal, explaining:

> [Diaz] would . . . have us . . . read the word 'banking' expansively to include [Pan American]'s filing of a criminal complaint based on the alleged passing of bad checks. We decline to read the term 'banking' so broadly.
>
> The statute is otherwise limited to cases arising from 'transactions' and 'other . . . financial operations' of banking institutions. We think that this limited range of companion parts of the same statutory section militates in favor of a similar narrow limitation for the term 'banking'. Moreover, a commonsense approach to a statute principally concerned with financial transactions of an international character suggests that 'banking' includes only traditional banking activities. As was the district court, we are unable to believe that Congress intended to reach all cases in which a bank is a party. If Congress so intended, it could have stated its intent more easily. The authority which we have been able to find supports our reading of § 632. We therefore conclude that the filing of a criminal complaint as a result of [Diaz]'s alleged passing of bad checks falls outside the scope of traditional banking and that the district court properly dismissed.

*Id*. at 31-32 (footnote and citations omitted) (citing, among others, *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 791-92 (2d Cir. 1980)).

To recap, Diaz bounced a couple of checks, Pan American filed criminal charges, and Diaz sued in federal court for malicious prosecution. *Id*. at 31. The First Circuit held that Pan American's filing of a criminal complaint was not an aspect of "banking" and, therefore, Diaz's claim of

---

[1] The Edge Act's third element also includes a clause covering "banking in a dependency or insular possession of the United States," 12 U.S.C. § 632, which includes Puerto Rico. Thus, the "foreign" aspect was not in dispute.

malicious prosecution did not "arise out of" a banking transaction, even though the entire episode could be traced back to Diaz's bounced checks, which are certainly banking transactions. *Id*. at 31-32. The First Circuit declined to find jurisdiction under the Edge Act and dismissed the case. *Id*.

We find the First Circuit's reasoning persuasive. Analogously to the circumstances in *Diaz*, Sollitt accused a co-worker of misconduct, KeyCorp fired Sollitt, and Sollitt sued in federal court for wrongful termination.[2] KeyCorp's firing of Sollitt was not an aspect of "banking" and, therefore, Sollitt's claim of wrongful termination did not "arise out of" a banking transaction, even though the entire episode arguably can be traced back to the PHC foreign currency transaction. This scenario does not satisfy the third element of the Edge Act, 12 U.S.C. § 632.

### III.

Because KeyCorp, the removing party, cannot demonstrate that the claim at issue actually "arose out of" a transaction involving international or foreign banking, it cannot satisfy 12 U.S.C. § 632. *See Diaz*, 635 F.2d at 31-32. Consequently, this case lacks federal subject matter jurisdiction.

We **VACATE** the judgment of the district court and **REMAND** this case with instructions to grant plaintiff-appellant Kevin Sollitt's motion for remand to the state court.

---

[2] This is, of course, Sollitt's version of events and ignores KeyCorp's putative and independent reason for firing Sollitt — i.e., his possession of pornography on his work computer in violation of KeyCorp's Code of Ethics.